### In re COUNTRY MANOR OF KENTON, INC., Debtor.

#### Bankruptcy No. 93–32223.

United States Bankruptcy Court, N.D. Ohio, Western Division.

Aug. 18, 1994.

Office of U.S. Trustee, Derrick V. Rippy, Cleveland, OH.

James M. Perlman, Thomas J. Schank, Toledo, OH, for debtor.

John N. Graham, Trustee, Toledo, OH.

Mary Ann Whipple, Toledo, OH, for trustee.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court for Hearing on a Motion for Authority to Sell Personal Property Free and Clear of Liens brought by the Debtor and the Objections filed by the United States Trustee, State Home Savings Bank and Ewers–Bogojevich and Company. The United States of America filed a Response. A Hearing was held in which the parties were afforded the opportunity to present evidence and arguments they wished the Court to consider in reaching its decision. The Court has reviewed the arguments of counsel, exhibits, relevant statutory and case law, as well as the entire record. Based upon that review and for the following reasons the Motion for Authority to Sell Personal Property Free and Clear of Liens is Denied.

## FACTS

On July 30, 1993 the Debtor filed for bankruptcy under Chapter 11 of the Bankruptcy Code. Debtor is a corporation known as Country Manor of Kenton located at 911 W. Pattison Avenue, Kenton, Hardin County, Ohio. This is a facility which contains fifty (50) nursing home facility beds licensed pursuant to Ohio Revised Code Chapter 3721. The nursing facility participates in the Title XIX, Medicaid Program and all fifty (50) of its beds are so certified. Dana and Marilyn Crow are the sole shareholders in Debtor corporation.

On February 9, 1994, a Motion for Authority to Sell Personal Property Free and Clear of Liens pursuant to 11 U.S.C. § 363 was filed by the Debtor. The Debtor believes that the sale of all assets would be in the best interest of all Creditors and parties in interest.

Subject to Bankruptcy Court approval, the Debtor has accepted from Doris Baldwin, or her related affiliate or nominee, an offer in the sum of Three Hundred Thousand and 00/100 Dollars ($300,000.00), subject to adjustment for income and expenses (including but not limited to applicable prepaid expenses and accrued liabilities) for purchase of all of the Debtor's right, title and interest in and to the personal property described below. The offer, specifically set forth in an Asset Purchase Agreement executed by and between the Debtor and Doris Baldwin on January 20, 1994 includes the sale of assets described as:

All tangible and intangible personal property of the Debtor, consisting of beds, leasehold estate, leasehold improvements, equipment and other assets related to and utilized in the operation of the fifty (50) nursing home beds of the Debtor's nursing home facility currently located at 911 W. Pattison Avenue, Kenton, Hardin County, Ohio including but not limited to: (a) All equipment and leasehold improvements; (b) All operating rights, lease agreements and all contracts or agreements granting the Debtor any exclusive or non-exclusive right to lease, operate or maintain the assets of the facility; (c) All of the Debt-

or's right, title benefit and interests in and to goodwill, trademarks, trade or brand names, service marks or other intangible property pertaining to the facility, including but not limited to Debtor's right to use the name "Country Manor of Kenton" (collectively referred to as the "Intellectual Property"); (d) To the extent of any ownership interest in the documents of Debtor, if any, all plans, specifications, architectural renderings and environmental or other surveys of the facility.

The United States of America (hereafter "USA") filed a Response to Debtor's Motion stating that it did not object to the proposed sale provided that Dana and Marilyn Crow disclose their financial gain as a result of the sale. Debtors must also provide an explanation as to the disparity in the Seven Hundred Fifty Thousand and 00/100 Dollars ($750,000.00) value of the nursing home license as listed in the Petition and the value of such license at less than Three Hundred Thousand and 00/100 Dollars ($300,000.00) based upon the purchase offer agreement. The USA also suggests the contemplated sale be deferred pending a decision on the pending Motion for Consolidation. (This is one of four (4) related nursing home cases which have been consolidated during the pendency of this cause.)

The United States Trustee (hereafter "Trustee") objected to the proposed sale stating that the Debtor's schedules list total assets of Eight Hundred Ninety Six Thousand Nine Hundred Ninety Six and 00/100 Dollars ($896,996.00) with the Nursing Home Medicaid Certified License being the most significant asset valued at Seven Hundred Fifty Thousand and 00/100 Dollars ($750,000.00). The proposed purchase price is less than half of the scheduled value of the license alone. The Trustee questions the adequacy of the amount offered to purchase the assets. The Trustee further argues that there is also the possibility that debts and intercorporate transfers have not yet been disclosed in which, if this is the case, the disposition of assets in one (1) case may have an affect on a related case.

State Home Savings Bank (hereafter "State Home") objected to the Debtor's Mo-tion stating it is a secured Creditor and that the proposed sale fails to adequately protect its interests. Upon the sale, State Home contemplates the transfer of the Certificate of Need to Doris Baldwin without assurances that the Debtor will continue to operate at the same site for the term of the mortgage. The Certificate of Need could be separated from the building and real estate and transferred to another nursing home facility within the same county. If this were to happen, according to State Home, the value of the real estate and improvements upon which State Home has its mortgage would be substantially impaired.

Ewers–Bogojevich and Company (hereafter "Ewers") objected to the Debtor's Motion stating that insufficient information was provided to Creditors to determine whether the proposed sale was really in the best interests of the estate. Further, the proposed sale price of Three Hundred Thousand and 00/100 Dollars ($300,000.00) appears insufficient. Ewers asserted that the primary asset being transferred in the proposed sale is the Certificate of Need for fifty (50) nursing home beds. According to Ewers, the fair market value of a nursing home bed typically ranges from Twelve Thousand Five Hundred and 00/100 Dollars ($12,500.00) to Thirty Thousand and 00/100 Dollars ($30,000.00) per bed. The proposed consideration for this sale is only Six Thousand and 00/100 Dollars ($6,000.00) per bed. Ewers also objected to the Motion, questioning whether the purchaser had a prior involvement with the nursing home facility and/or the real property underlying the facility and whether this is an arms-length transaction with the best terms possible for the estate.

A Hearing was held on Debtor's Motion pursuant to Bankruptcy Rule 6004 for Authority to Sell Real and Personal Property Free and Clear of Liens. The Court granted Debtor leave to file an amended Motion and Request for a new hearing or sale date within three (3) weeks. More than three (3) weeks have elapsed and the attorney for the Debtor has not filed a request for a Hearing or a sale date.

*LAW*

11 U.S.C. § 363 reads in relevant part:

§ 363. **Use, sale, or lease of property.**

(b)(1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

(f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if (1) applicable non bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

**Bankruptcy Rule 6004. Use, Sale or Lease of Property.**

(a) **Notice of Proposed Use, Sale, or Lease of Property.** Notice of a proposed use, sale or lease of property, other than cash collateral, not in the ordinary course of business shall be given pursuant to Rule 2002(a)(2), (c)(1), (i), and (k) and, if applicable, in accordance with § 363(b)(2) of the Code.

(b) **Sale Free and Clear of Liens and Other Interests.** A motion for authority to sell property free and clear of liens or other interests shall be made in accordance with Rule 9014 and shall be served on the parties who have liens or other interest in the property to be sold. The notice required by subdivision (a) of this rule shall include the date of the hearing on the motion and the time within which objections may be filed and served on the debtor in possession or trustee.

(f) **Conduct of Sale Not in the Ordinary Course of Business.**

(1) Public or Private Sale. All sales not in the ordinary course of business may be by private sale or by public auction. Unless it is impracticable, an itemized statement of the property sold, the name of each purchaser, and the price received for each item or lot or for the property as a whole if sold in bulk shall be filed on completion of a sale. If the property is sold by an auctioneer, the auctioneer shall file the statement, transmit a copy thereof to the United States trustee, and furnish a copy to the trustee, debtor in possession, or chapter 13 debtor. If a property is not sold by an auctioneer, the trustee, debtor in possession, or chapter 13 debtor shall file the statement and transmit a copy thereof to the United States trustee.

### DISCUSSION

This case is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(N); and this Court has jurisdiction over the parties and subject matter pursuant to 28 U.S.C. § 1334.

■ The Debtor proposes to sell its business for Three Hundred Thousand and 00/100 Dollars ($300,000.00) free and clear of liens pursuant to 11 U.S.C. § 363. The controlling case in the Sixth Circuit is *Stephens Industries, Inc. v. McClung*, 789 F.2d 386 (6th Cir.1986) which has adopted the reasoning set forth in the seminal case of *In re Lionel Corp.*, 722 F.2d 1063 (2nd Cir.1983) That is, the instant sale may be authorized "when a sound business purpose dictates such action." *Stephens*, 789 F.2d at 390.

The Sixth Circuit held that the Bankruptcy Court did not err in concluding that Stephens Industries' mortgage did not include the FCC license. The court rejected the argument that "a broadcast license was held to follow and be tied to a station's hard, tangible, physical assets." *Id.* at 391. This Court finds a similarity with the controlling case, *Stephens Industries, Inc.* and the case at bar. The nursing home license is not a part of the mortgage liens and it can be sold separately from the physical building; however, this Court questions the sound business purpose of this proposed sale.

■ The sound business purpose test has four (4) requirements: 1) sound business reason; 2) accurate and reasonable notice; 3) adequate price; and 4) good faith. *In re*

*Plabell Rubber Products, Inc.,* 149 B.R. 475 at 479 (Bkrtcy.N.D.Ohio 1992). Considering these factors, the Court finds that the proposed sale between Debtor and Doris Baldwin fails to meet the adequate price and the good faith elements of the sound business purpose test.

The factor the Court is most concerned about is the lack of effort in soliciting other offers. *See In re Plabell Rubber Products, Inc.,* 149 B.R. 475, 479 (Bkrtcy.N.D.Ohio 1992). "Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Coastal Industries, Inc.,* 63 B.R. 361 (Bkrtcy. N.D.Ohio 1986), (quoting *In re Rock Indus. Mach. Corp.,* 572 F.2d 1195, 1198 (7th Cir. 1978)). In *In re Planned Systems, Inc.,* 82 B.R. 919, 923 (Bkrtcy.S.D.Ohio 1988), the private sale of property was allowed because the property had been listed with a real estate broker and the marketing efforts were sufficient to provide adequate exposure of the property.

The real estate owned by the Debtor corporation has been neither advertised nor placed upon the real estate market. It is unclear to the Court how long negotiations for the property have taken place. No other bids are known to have been solicited or placed upon the property and the Court questions whether "the instant offer represents a good faith offer, negotiated at arms length." *In re Weatherly Frozen Food Group, Inc.,* 149 B.R. 480, 483 (Bkrtcy. N.D.Ohio 1992). Doris Baldwin's offer to purchase the Debtor's property for Three Hundred Thousand and 00/100 Dollars ($300,000.00) is below the combined asset value of the Certificate of Need and the real estate. This Court cannot find that her offer represents a good faith purchase.

In the *Matter of Cossett,* 51 B.R. 166 (Bkrtcy.S.D.Ohio 1985), the sale of estate property at a price vastly below the appraised market value was denied. The "proposed sale price of Forty Thousand and 00/100 Dollars ($40,000.00) for property which seems to be worth Eighty-five Thousand and 00/100 Dollars ($85,000.00) "shocks the conscience" of this Court. The proposed price appears to be grossly inadequate and simply will not be approved." *Id.* at 168. Section 363(f) of the Bankruptcy Code reads:

> The Trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of such interest; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

Since the proposal to sale of Debtor's real estate and Certificate of Need is proceeding under Section 363(b), no sale can be approved unless one of these five conditions is met. Subsections (1), (2), (3) and (4) are not met in this proposed sale since Trustee, State Home, and Ewers are not consenting, the aggregate value of the liens exceeds the sale price, the interests of Trustee, State Home, Ewers, and United States of America are not in bona fide dispute and "applicable nonbankruptcy law will not permit sale free and clear of those interests". *In re Hunt Energy Co., Inc.,* 48 B.R. 472 at 484 (Bkrtcy.N.D.Ohio 1985).

Title 11 U.S.C. § 363(b)(1) allows a Bankruptcy Court, after notice and hearing, to authorize the sale of the debtor's assets outside the ordinary course of business. *Stephens Industries, Inc. v. McClung,* 789 F.2d 386 (6th Cir.1986). In *In re Lionel,* 722 F.2d 1063, the Second Circuit discussed the circumstances under which a Bankruptcy Judge can authorize, prior to the acceptance of and outside any plan of reorganization under Chapter 11, the sale of an important asset of the debtor's estate, outside the ordinary course of business. The Second Circuit concluded "that there must be some articulated business justification ... for using, selling, or leasing property out of the ordinary course of business before the Bankruptcy Judge may order such disposition under section 363(b)."

*Id.* at 1071. The Second Circuit attempted to provide some guidance for the bankruptcy courts by stating:

> In fashioning its findings, a bankruptcy judge must not blindly follow the hue and cry of the most vocal special interest groups; rather, he should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders alike. He might, for example, look to such relevant factors such as the proportionate value of the asset to the estate as a whole, the amount of elapsed time since filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value. This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge. *Id.* at 1071.

In sum, this Court bases its decision to Deny the Debtor's Motion to Sell Property Free and Clear of Liens as those reasons relied upon by the Sixth Circuit in *Stephens Industries, Inc.* A sale may be authorized when a sound business purpose dictates such an action. The proposed sale of Debtor's property fails to meet the adequate price and the good faith tests of the requirements for sale. Under 11 U.S.C. § 363, the Trustee, State Home, and Ewers are not consenting to the sale as their interests will be in jeopardy if the nursing home Certificate of Need is separated from the physical real estate. For the foregoing reasons, this Court does not find it appropriate to authorize the Debtor's Motion.

In making the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that the Debtor's Motion for Authority to Sell Personal Property Free and Clear of Liens be, and is hereby **DENIED.**